**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW HINTON,<br><br>    Plaintiff,<br><br>    v.<br><br>SGT JEFFREY WHITE, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 10-3902 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

The pro se plaintiff, prisoner Andrew Hinton, brings this action against the defendants, Sgt Jeffrey White and Officer Lorenzo Pettway of the Asbury Park Police Department Street Crimes Unit ("SCU"), pursuant to 42 U.S.C. § 1983. (See generally dkt. entry no. 1, Compl.) Hinton appears to allege that the defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. (See id. at 5, 7.)

The defendants move for summary judgment in their favor and against Hinton. (See dkt. entry no. 19.)[1] Hinton has not filed opposition to the Motion.[2]

---

[1] The defendants actually move for relief pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (See Mot. at 1.) But the Motion rests on matters presented outside of the pleadings. (See, e.g., dkt. entry no. 19-4, White Cert.; dkt. entry no. 19-5, Pettway Cert.) The Court thus treats the Motion as one seeking relief pursuant to Rule 56. See Fed.R.Civ.P. 12(d).

[2] The Motion's return date was extended from August 20, 2012 to October 15, 2012 to accommodate Hinton's request for additional time to file opposition materials. (See dkt. entry no. 21, 8-17-12 Order.) The 8-17-12 Order and related request demonstrate that Hinton knew of but failed to take the opportunity to oppose the Motion. (See id.)

The Court now resolves the Motion without oral argument. See L.Civ.R. 78.1(b).  The Court will (1) grant the Motion, and (2) enter judgment in the defendants' favor and against Hinton.

## STANDARD OF REVIEW

A district court may not grant an unopposed motion for summary judgment unless the movants demonstrate, "on the basis of what [they] put before the court", that "the facts set forth in the motion entitle [them] to judgment as a matter of law." Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 176 (3d Cir. 1990); see also Fed.R.Civ.P. 56(e)(3).  However, the Court may deem the movants' factual assertions to be undisputed.  See Fed.R.Civ.P. 56(e)(2); L.Civ.R. 56.1; Kelvin Cryosys., Inc. v. Lightnin, 252 Fed.Appx. 469, 472 (3d Cir. 2007).

Hinton has not disputed the material facts set forth by the defendants in the Statement of Undisputed Facts ("SOF") or supporting materials.  (See dkt. entry no. 19-3, SOF.)  The Court thus deems those facts to be undisputed.  See L.Civ.R. 56.1; Kelvin Cryosys., 252 Fed.Appx. at 472.[3]  The sole question remaining is whether the defendants are entitled to judgment as a matter of law. See, e.g., Anchorage Assocs., 922 F.2d at 176.

---

[3] Even if the record contains facts supporting Hinton's position, the burden is on Hinton, not the Court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat the Motion.  See, e.g., Ebron v. Oxley, No. 06-1938, 2007 WL 2140056, at *2 (D.N.J. July 24, 2007).

**BACKGROUND**

Hinton's claims rise from events taking place on March 17, 2009. (See generally Compl.; see SOF at ¶ 2.) On that date, SCU members White and Pettway were patrolling an apartment complex in Asbury Park, New Jersey in an unmarked patrol car ("Police Car"). (See SOF ¶ 2.) SCU members routinely wear black shirts with the word "POLICE" appearing on both the front and back in large, yellow letters, and wear badges on neck chains. (See Pettway Cert., Ex. A, Pettway Report at 1; White Cert., Ex. A, White Report at 1.) White drove the Police Car. (See SOF at ¶ 2.)

During their patrol, White and Pettway saw Hinton and a male associate ("the Buyer") engage in an apparent drug transaction. (Id. at ¶ 3.)[4] Hinton saw the Police Car, said something to the Buyer, and began walking away from the Police Car. (See id.) The Buyer walked in the opposite direction. (See id. at ¶ 5.)

White yelled at Hinton to "stop" while Pettway exited the Police Car and questioned the Buyer. (See id. at ¶¶ 5-6.) Hinton disregarded White's instruction and began to run from the Police Car. (See id. at ¶ 6.) He turned the corner and ran between a laundromat and an apartment building. (See id.)

White, who was still driving the Police Car, followed Hinton. (See id.) Hinton circled the playground and ran back to the

---

[4] White recognized Hinton from an earlier narcotics investigation and arrest. (See Pettway Report at 2; SOF at ¶ 4.)

street, through the space between the laundromat and the apartment building.  (See id. at ¶¶ 6-7.)  White continued to follow him in the Police Car, and Pettway -- who had instructed the Buyer to leave the scene -- approached the space between the laundromat and the apartment building.  (See id. at ¶¶ 6-8.)

Pettway met Hinton near the laundromat and attempted to grab him by the collar.  (See id. at ¶¶ 7-8; Pettway Cert. at ¶ 4.)  But Hinton pushed Pettway, spun away, and fell into the path of the oncoming Police Car.  (See SOF at ¶ 8.)  White saw Hinton fall, but was unable to fully brake before the Police Car struck Hinton.  (See id.; White Cert. at ¶ 6.)

Pettway approached Hinton and saw him throw several bundles of heroin under the Police Car and into the sewer drain.  (See SOF at ¶ 11.)  He and White worked together to handcuff Hinton.  (See id.)  White then retrieved those bundles that were thrown under the Police Car.  (See id. at ¶ 12; White Cert. at ¶ 9.)  He also attempted to search Hinton, but Hinton began to scream.  (See SOF at ¶ 12.)  White thus called for an ambulance.  (See id.)

The ambulance transported both Hinton and White to Jersey Shore University Medical Center, where hospital staff removed Hinton's clothing and treated his wounds.  (See id. at ¶ 13.)  Hinton's treating physician determined that Hinton broke a small bone in his lower leg, and urinalysis demonstrated the presence of

marijuana and cocaine.  (See id.)  Police discovered three more bundles of heroin and $217 in Hinton's jacket.  (See id.)

Hinton was charged with, inter alia, a third-degree violation of N.J.S.A. § 2C:35-7 for possession with the intent to distribute a controlled dangerous substance within one thousand feet of a school.  (See id. at ¶ 14; White Cert., Ex. C, Offender Details at 1.)  He was sentenced to a mandatory minimum term of three years.  (See id. at ¶ 15; White Cert., Ex. C, Offender Details at 1.)

Hinton thereafter commenced the action.  (See generally Compl.)  He alleges that Pettway and White "used the means of excessive force to arrest on an illegal search and seizure", and that "Officer Pettway illegally searched me after Sgt Jeffrey White ran me over" and that the search occurred while he "was in dire need of medical attention."  (Id. at 5, 7.)  Hinton explicitly alleges that Pettway and White: (1) used excessive force when attempting to apprehend Hinton; (2) violated his right to be free of illegal search and seizure under the Fourth Amendment; (3) violated his "Eighth Amendment Rights of Cruel and Unusual Punishment"; and (4) violated his right to due process under the Fourteenth Amendment.  (Compl. at 5.)[5]

---

[5] Hinton actually alleges a violation of his "1st and 14th Amendment Rights of Due Process".  (Compl. at 5.)  Because the facts underlying the action do not support a claim under the First Amendment, the Court will not further comment on or analyze Hinton's reference to the First Amendment.

5

**DISCUSSION**

The Motion rests on two grounds. Pettway and White first argue that they are entitled to qualified immunity. (See dkt. entry no. 19-2, Br. in Supp. at 7-13.) They also argue that Hinton's claims sounding in illegal search and seizure are barred by the Heck doctrine. (See id. at 13-14.) See Heck v. Humphries, 512 U.S. 477 (1994). The Court will address both arguments.

**I.   The Heck Doctrine**

The defendants argue that the Heck doctrine bars Hinton's Fourth Amendment claim of illegal search and seizure. (Br. in Supp. at 13-14.) The United States Court of Appeals for the Third Circuit ("Third Circuit") has summarized the doctrine.

> In Heck, the Supreme Court announced that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must, as a threshold matter, show that there has been a "favorable termination" of his prior proceedings by demonstrating that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87, 114 S.Ct. 2364. As the United States Court of Appeals for the Second Circuit has explained, the Supreme Court's rationale in Heck "was based, in part, on a desire to 'avoid [ ] parallel litigation over the issues of probable cause and guilt,' prevent 'the creation of two conflicting resolutions arising out of the same or identical transaction,' and preclude 'a convicted criminal defendant [from making a] ... collateral attack on the conviction through the vehicle of a civil suit.'"

6

>  Huang v. Johnson, 251 F.3d 65, 73 (2d Cir. 2001) (quoting Heck, 512 U.S. at 484, 114 S.Ct. 2364).

Royal v. Durison, 254 Fed.Appx. 163, 165 (3d Cir. 2007).

This action presents a textbook application of the Heck doctrine. Hinton has failed to present evidence demonstrating that the criminal charges related to the action (i.e., those arising from his March 17, 2009 arrest) ended in a favorable termination. See Royal, 254 Fed.Appx. at 165. The Heck doctrine thus bars Hinton from now raising his Fourth Amendment claim of illegal search and seizure, which, if proven, could call into question the validity of the related state criminal conviction. See Heck, 512 U.S. at 486-87; Royal, 254 Fed.Appx. at 165. A contrary holding would impermissibly allow Hinton to collaterally attack that conviction. See Heck, 512 U.S. at 484; Huang, 251 F.3d at 73.

### II.  The Doctrine of Qualified Immunity

The Third Circuit has recently summarized the doctrine of qualified immunity.

> The doctrine of qualified immunity insulates government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We ask: (1) whether the facts alleged by the plaintiff show the

7

> violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. Id.; Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two Saucier prongs in any order, at their discretion. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

James v. City of Wilkes-Barre, No. 11-3345, 2012 WL 5954632, at *3 (3d Cir. Nov. 29, 2012). If Hinton has failed to satisfy either prong, then the defendants are entitled to judgment as a matter of law. See id. (citing Pearson, 555 at 232).

The first question of the Saucier analysis is whether a constitutional violation occurred. This "is not a question of immunity, but whether there is any wrong to address." James, 2012 WL 5954632, at *2 (quoting Ray v. Twp. of Warren, 626 F.3d 170, 174 (3d Cir. 2010)). Here, the remaining claims raise issues concerning (1) the alleged use of excessive force, in violation of the Fourth Amendment; (2) the alleged deprivation of Hinton's right to substantive due process under the Fourteenth Amendment; and (3) Hinton's right to be free from cruel and unusual punishment under the Eighth Amendment. (See Compl. at 5, 7.)

### A. The Excessive Force Claim

A plaintiff will prevail on an excessive force claim if he demonstrates that: (1) a seizure occurred; and (2) the seizure was unreasonable under the circumstances. See Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989); Lamont v. New Jersey, 637 F.3d 177, 182-

8

83 (3d Cir. 2011). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

"Determining whether the force used to effect a particular seizure is 'reasonable' . . . requires . . . careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Brown v. Cwynar, No. 11-1948, 2012 WL 2045764, at *3 (3d Cir. June 7, 2012) (quoting Graham, 490 U.S. at 396). In evaluating reasonableness, the Court must consider the fact that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397. Thus, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene; Monday morning quarterbacking is not allowed." Lamont, 637 F.3d at 183 (citation omitted) (internal quotation marks omitted); see also Carswell v. Bor. of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) ("Reasonableness is to be

evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.")

The Court has thus reviewed the undisputed facts underlying the action from "the perspective of a reasonable officer on the scene", and considered "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them". Graham, 490 U.S. at 397; Lamont, 637 F.3d at 183. The Court concludes that both defendants are entitled to judgment on the Excessive Force Claim in their favor and against Hinton.

The Excessive Force Claim, insofar as it is raised against Pettway, appears to relate to the moment when he grabbed (or attempted to grab) Hinton by the collar. (See SOF at ¶ 7.) The Court considers the following facts to be relevant. On the night in question, the defendants saw Hinton -- an individual known from past narcotics investigations -- participate in an apparent drug transaction. (See id. at ¶ 3.) When the defendants attempted to speak to or otherwise detain Hinton, he fled from the scene. (See id. at ¶¶ 5-8.) It thus appears as a matter of law that: (1) Pettway was aware that Hinton engaged in serious criminal activity; and (2) Hinton attempted to evade Pettway by flight. (See id. at ¶¶ 3, 5-8.) Under those circumstances, Pettway used justifiable force when grabbing (or attempting to grab) Hinton's collar, to detain him. See Brown, 2012 WL 2045764, at *3; cf.

10

Davis v. Beers, 421 Fed.Appx. 179, 180-81 (3d Cir. 2011) (federal agent did not use excessive force when striking a fugitive "who had fled from a prosecution for serious drug charges"); Gannaway v. Karetas, 438 Fed.Appx. 61, 67 (3d Cir. 2011) (police used reasonable force when chasing after and tackling suspect who committed a "severe" crime and then fled from the police).

The Excessive Force Claim, insofar as it is raised against White, relates to the moment when the Police Car struck Hinton. (See Compl. at 5, 7; SOF at ¶ 8.) The Court is mindful that White, like Pettway, was reacting to circumstances in which: (1) he was aware that Hinton engaged in serious criminal activity; and (2) Hinton attempted to flee from the police. (See SOF at ¶¶ 3, 5-8.) The Court also considers it highly relevant that Hinton, in his efforts to evade detention: (1) pushed Pettway; (2) spun away from Pettway; and (3) stumbled into the path of the moving Police Car. (Id. at ¶ 8.) The undisputed facts demonstrate that White attempted to stop the Police Car before it struck Hinton. (Id.; White Cert. at ¶ 6.)

The Court is mindful police officers "are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving". Graham v. Connor, 490 U.S. at 397. White was forced to make such a judgment. While driving the Police Car in pursuit of Hinton -- a suspect who fled the scene of a serious crime, and continued to actively evade police custody --

11

he saw Hinton stumble into the path of the Police Car. (See SOF at ¶¶ 3, 5-8.) White then attempted to do something objectively reasonable; he attempted to stop the car before it struck Hinton. (See id. at ¶ 9.) See Lamont, 637 F.3d at 183 (question before the Court is whether defendant officer's actions were objectively reasonable in light of the facts and circumstances confronting him). The fact that White could not fully stop the Police Car before it struck Hinton does not render his actions unreasonable, and does not transform the incident from an unfortunate accident into a cognizable constitutional claim.

### B. The Cruel and Unusual Punishment Claim

It appears that the Cruel and Unusual Punishment Claim relates to the Police Car striking Hinton, and Hinton's resultant injuries. (See Compl. at 7.) Hinton alleges in the Complaint that:

> I was run over from behind . . . [.] When I awoke I had no leg movement and bruises and abrasions. . . . [N]umerous officers . . . were trying to move me when I was in dire need of medical attention. One of my legs where [sic] severely broken while the other was bruised and contused due to injury[.]

(Id.) However, Hinton is ineligible for relief under the Eighth Amendment.

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal

>   adjudication of guilt in accordance with due process of
>   law.

City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (citation omitted); see Navolio v. Lawrence Cnty., 406 Fed.Appx. 619, 622 (3d Cir. 2011)

Because there had been no formal adjudication of guilt against Hinton at the time he required medical care, the Eighth Amendment does not apply to the action.  See City of Revere, 463 U.S. at 244.  The Court will thus grant judgment on the Cruel and Unusual Punishment Claim against Hinton and in the defendants' favor.

### C.   The Substantive Due Process Claim

It appears, however, that Hinton's allegations relating to his wounds and need for treatment are properly considered as a substantive due process claim.  See id.; A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 584 (3d Cir. 2004.)  Failure to provide medical treatment to an individual in police custody may constitute a violation of the individual's Fourteenth Amendment rights.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).  But such a failure only rises to the level of a constitutional violation if it demonstrates a deliberate indifference to the individual's serious medical needs.  See id.

The undisputed facts demonstrate that the defendants were not deliberately indifferent to Hinton's medical needs.  After the Police Car struck Hinton, both the defendants handcuffed Hinton,

13

secured bundles of heroin that Hinton had thrown away from his person, and attempted to search his body.  (See SOF at ¶¶ 11-12.) At that point, Hinton began to scream, and White requested an ambulance. (See id. at ¶ 12.)  Because the undisputed facts demonstrate that the defendants ceased their search and called for an ambulance when it was apparent that Hinton was injured, the Court concludes that they did not act with deliberate indifference. Cf. Groman, 47 F.3d at 637 ("The record clearly establishes that the police offered [the plaintiff] medical assistance . . . . Defendants were not deliberately indifferent to [the plaintiff's] medical needs.").

## CONCLUSION

The Court, for the reasons stated above, will: (1) grant the Motion; and (2) enter judgment in favor of the defendants and against Hinton on all counts.  The Court will issue a separate Order and Judgment.

          s/ Mary L. Cooper  
          **MARY L. COOPER**  
          United States District Judge

Date:     December 6, 2012